# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREA KISKERAVAGE, ANDREA YACHERA, JUAN DOMINGUEZ, KEILYN WILLIAMS, and KIM ALVAREZ, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | **Civil No. 5:24-cv-05567-JMG** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| LEHIGH VALLEY HEALTH NETWORK, INC., THE BOARD OF DIRECTORS OF LEHIGH VALLEY HEALTH NETWORK, INC., THE EXECUTIVE COMPENSATION COMMITTEE OF LEHIGH VALLEY HEALTH NETWORK, INC. and JOHN DOES 1-30, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF SETTLEMENT NOTICE, PRELIMINARY APPROVAL OF PLAN OF ALLOCATION, AND SCHEDULING OF FAIRNESS HEARING**

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II. BACKGROUND ...................................................................................................2

  A.  Procedural History and Settlement Negotiations ........................................2

  B.  Claims for Relief ........................................................................................3

  C.  The Proposed Settlement ............................................................................4

  D.  Class Notice and Administration of Claims.................................................6

III. PRELIMINARY APPROVAL IS WARRANTED ..................................................6

  A.  The Proposed Class Meets all Rule 23 Requirements .................................6

    1.  The Class is Sufficiently Numerous .................................................6

    2.  Common Questions of Law and Fact Abound...................................6

    3.  Plaintiffs' Claims are Typical of the Class .......................................7

    4.  Plaintiffs and Class Counsel Will Adequately Protect the Class's
        Interests ...........................................................................................7

      i.   Plaintiffs Are Adequate Representatives ............................7

      ii.  Plaintiffs' Counsel Are more than adequate ......................8

    5.  The Class May Be Properly Certified Under Rule 23(b)(1) ............9

IV. THE SETTLEMENT SHOULD BE PRELIMINIARILY APPROVED .............10

  A.  The Settlement Satisfies Third Circuit Requirements ..............................10

    1.  The complexity, expense, and likely duration of the litigation .....11

    2.  The reation of the Class to the Settlement ....................................12

    3.  The stage of the of the prceedings and the amount of discovery
        conducted .......................................................................................13

    4.  The risks of establishing liability and dameages (Factors 4, 5).....14

    5.  The risks of maintaining class certification ..................................15

6.      Defendants' ability to withstand a great judgment ........................15

7.      The range of reasonableness of the settlement fund in light of all the attendant risks of litigation (factors 8 and 9 ........................16

8.      The Applicable Prudential Factors Also support Approval ...........18

V.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ........................21

VI.   CONCLUSION ................................................................................21

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Abramson v. Agentra, LLC*,
No. 18-cv-615, 2021 WL 3370057 (W.D. Pa. Aug. 3, 2021)....................................................20, 21

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002)....................................................................................................20

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013).......................................................................................................18

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006).........................................................................................................7

*Castro v. Sanofi Pasteur Inc.*,
No. 11-7178, 2017 WL 4776626 (D.N.J. Oct. 23, 2017) ..........................................................20

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................................................13

*Cunningham v. Wawa, Inc.*,
No. 18-cv-3355, 2021 WL 1626482 (E.D. Pa. Apr. 21, 2021)............................................*Passim*

*Davis v. Magna Int'l of Am., Inc.*,
No. 20-cv 11060, 2025 WL 66052 (E.D. Mich. Jan. 10, 2025)..................................................12

*Delaware Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*,
739 F. Supp. 3d 270 (E.D. Pa. 2024) .........................................................................................13

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ............................................................................................14

*Diaz v. BTG Int'l Inc.*,
No. 19-cv-1664, 2021 WL 2414580 (E.D. Pa. June 14, 2021)..........................................*Passim*

*Foster v. Adams & Assocs., Inc.*,
No. 18-cv-02723, 2022 WL 425559 (N.D. Cal. Feb. 11, 2022).................................................18

*Gaines v. BDO USA, LLP*,
No. 22-cv 1878 (N.D. Ill. May 18, 2024) ..................................................................................18

*Galt v. Eagleville Hospital,*
310 F. Supp. 3d 483 (E.D. Pa. 2018) .......................................................................19

*Gates v. Rohm & Haas Co.*
248 F.R.D. 427 (E.D. Pa. 2008 ..............................................................................12

*Girsh v. Jepson,*
521 F.2d 153 (3d. Cir. 1975)...................................................................*Passim*

*Hawkins v. Cintas Corp.,*
No. 19-cv-1062, 2024 WL 3982210 (S.D. Ohio Aug. 27, 2024) (*Hawkins I*) .......................13, 14

*Hawkins v. Cintas Corp.,*
No. 19-cv-1062, 2025 WL 523909 (S.D. Ohio Feb. 18, 2025) (*Hawkins II*)...........................9, 19

*In re Ikon Office Solutions, Inc.,*
191 F.R.D. 457 (E.D. Pa. 2000) .............................................................................6

*Johnson v. Fujitsu Tech. & Business of America, Inc.,*
No. 16-cv-03698, 2018 WL 2183253 (N.D. Cal. May 11, 2018)..................................17

*Kanefsky v. Honeywell Int'l Inc.,*
2022 WL 1320827 (D.N.J. May 3, 2022) ..............................................................*Passim*

*Karpik v. Huntington Bancshares Inc.,*
No. 17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ....................................12, 13, 15

*Krueger v. Ameriprise,*
No. 11-cv-02781, 2015 WL 4246879 (D. Minn. July 13, 2015) ...................................12, 19

*Mass. Mut. Life Ins. Co.,*
473 U.S. 134 (1985).............................................................................................9

*Mehling v. New York Life. Ins. Co.,*
246 F.R.D. 467 (E.D. Pa. 2007)..............................................................................10

*In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.,*
MDL No. 1658, 2009 WL 331426, (D.N.J. Feb. 10, 2009)..........................................10

*In re: Nat'l Football League Players Concussion Injury Litig.,*
821 F.3d 410 (3d Cir. 2016)..................................................................................11

*In re: Nat'l Football League Players Concussion Injury Litig.,*
821 F.3d 410, 437 (3d Cir. 2016), *as amended* (May 2, 2016) ("*NFL*")...............................8

*Nesbeth v. ICON Clinical Rsch. LLC,*
No. 21-cv-1444, 2022 WL 22893879 (E.D. Pa. Mar. 10, 2022) ..........................................*Passim*

*In re Pet Food Prods. Liab. Litig.,*
629 F.3d 333 (3d Cir. 2010)............................................................................................11

*Pinnell v. Teva Pharms. USA, Inc.,*
No. 19-cv-5738, 2021 WL 5609864 (E.D. Pa. June 11, 2021)......................................19

*Pledger v. Reliance Trust Co.,*
No. 15-cv-4444, 2021 WL 2253497 (N.D. Ga. Mar. 8, 2021) .............................12, 19

*Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
148 F.3d 283 (3d Cir. 1998)...................................................................................*Passim*

*Rossini v. PNC Fin. Servs. Grp., Inc.,*
No. 18-1370, 2020 WL 3481458 (W.D. Pa. June 26, 2020) ....................11, 13, 15, 20

*In re: Schering-Plough Corp. ERISA Litig.,*
589 F.3d 585 (3d Cir. 2009)....................................................................6, 9, 14, 20

*Stanford* v. *Foamex, L.P.,*
263 F.R.D. 156 (E.D. Pa. 2009).....................................................................................10

*Stevens v. SEI Invs. Co.,*
No. 18-cv-4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020) .......................................19

*Sullivan v. DB Investments, Inc.,*
667 F.3d 273 (3d Cir. 2011)...........................................................................................11

*Tracey v. MIT,*
16-cv-11620, 2018 WL 5114167 (D. Mass. Oct. 19, 2018) ...........................................8

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.,*
No. 19-cv-1227, 2022 WL 118104 (E.D. Pa. Jan. 12, 2022)........................................17

*Vista Healthplan, Inc. v. Cephalon, Inc.,*
No. 06-cv-1833, 2020 WL 1922902 (E.D. Pa. Apr. 21, 2020)......................................17

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011).........................................................................................................6

*Walsh v. Great Atl. & Pac. Tea Co.,*
726 F.2d 956 (3d Cir. 1983)...........................................................................................10

*In re: Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)...............................................................11, 14, 16

**STATUTES**

FED. R. CIV. P 23 .........................................................................................6, 7

FED. R. CIV. P 23(a) .........................................................................................6

FED. R. CIV. P 23(a)(1) .....................................................................................6

FED. R. CIV. P 23(a)(2) .....................................................................................6

FED. R. CIV. P 23(a)(4) .....................................................................................7

FED. R. CIV. P 23(b)(1) .....................................................................................9

FED. R. CIV. P 23(b)(1)(A) ............................................................................9, 10

FED. R. CIV. P 23(b)(1)(B) ............................................................................9, 10

FED. R. CIV. P. 23(c)(3) ...................................................................................21

FED. R. CIV. P. 23(e)(1)(B) .............................................................................10

FED. R. CIV. P.  23(e)(2) ..................................................................................10

28 U.S.C. §§ 1332(d), 1453, and 1711-1715 ..................................................21

29 U.S.C. § 1104(a). ..........................................................................................1

29 U.S.C. § 1104(a)(1)(A)(ii) ............................................................................3

**Other Sources**

Class Action Fairness Act of 2005 ("CAFA").................................................21

Employee Retirement Income Security Act of 1974 .................................*Passim*

Restatement (Third) of Trusts § 100 cmt. b (1) ..............................................15

## I.      INTRODUCTION

Plaintiffs Andrea Kiskeravage, Andrea Yachera, Juan Dominguez, Keilyn Williams, and Kim Alvarez ("Plaintiffs") by and through their undersigned counsel on behalf of the Lehigh Valley Health Network, Inc. 403(b) Savings Plan (the "Plan"), respectfully submit this Memorandum of Law in support of their motion for preliminary approval of the proposed Settlement of this ERISA class action. Plaintiffs commenced this action against Defendants[1] on October 21, 2024, with the filing of the Complaint. *See* ECF No. 1 ("Compl."). The Complaint alleged violations of fiduciary duties of prudence and loyalty imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

On June 3, 2025, the Parties participated in a mediation before Robert A. Meyer, Esquire of JAMS, a neutral, third-party private mediator with experience mediating ERISA actions and agreed to a settlement in principle of $1,150,000.00 (one million, one hundred and fifty thousand dollars). Over the last several months, the Parties have negotiated the specific terms of the Settlement Agreement and present it now for the Court's preliminary approval.[2] Plaintiffs believe the Settlement is an excellent result, providing a substantial, immediate payment to Settlement Class members and eliminating the risks and cost of trial. As detailed *infra*, the Settlement is fair, reasonable, and adequate under governing law, and meets all prerequisites for preliminary approval and dissemination of Class Notice.

---

[1] "Defendants" refers to Lehigh Valley Health Network, Inc., the Board of Directors of Lehigh Valley Health Network, Inc., and the Executive Compensation Committee of Lehigh Valley Health Network, Inc.

[2] Capitalized and undefined terms have the meaning ascribed to them in the Settlement Agreement, attached to the Gyandoh Decl. as Ex. 1. The Settlement Agreement has several exhibits: A (Long-Form Settlement Notice); B (Short-Form Postcard Settlement Notice); C (proposed Preliminary Approval Order); D (Plan of Allocation); E (proposed Final Approval Order); and F (CAFA Notice).

## II.    BACKGROUND

### A.    Procedural History and Settlement Negotiations

On February 9, 2023, before filing suit, Capozzi Adler P.C., on behalf of Plaintiffs, requested numerous documents and information from Defendants pursuant to Section 104(b)(4) of ERISA. *See* Gyandoh Decl., ¶ 7; Compl., ¶ 92. Following several months of investigation, including engaging consulting experts, Plaintiffs commenced this action by filing the Complaint on October 21, 2024, on behalf of the Plan. *Id*. ¶ 3. Plaintiffs' investigation was comprehensive, delving into an analysis of whether there were potential ERISA violations related to prohibited transactions, or breaches of the fiduciary duty of prudence and loyalty related to, among other things, underperforming investments, managed account services, and service providers. *Id.* Plaintiffs also investigated potential ERISA violations related to the Plan's fees and costs, including, the services provided to the Plan; the utilization of forfeited funds under the Plan; compensation received by the Plan's service providers; and other potential violations based on Defendants' alleged failure to implement a prudent process or manage the Plan prudently. *Id.* In the end, Plaintiffs decided to bring only the claims they brought because the specific facts of this case did not support other claims. *Id.* On December 30, 2024, Defendants filed an answer to the Complaint and formal discovery began. *See* ECF No. 13. On March 18, 2025, the Parties jointly moved to stay all deadlines pending their anticipated mediation. *See* ECF No. 19.

On January 22, 2025, Plaintiffs sent Defendants their first set of interrogatories and request for production of documents. *See* Gyandoh Decl., ¶ 10. Defendants provided their first production of documents on March 20, 2025, after the Parties moved to stay proceedings pending mediation. *Id*., ¶ 12. Defendants' document production included internal documents regarding Defendants' fiduciary processes relating to the allegations in the Complaint. The Parties swapped initial

disclosures on February 14, 2025. *Id.*, ¶ 11. On March 7, 2025, Defendants served Plaintiffs their first set of interrogatories and request for production of documents directed to all Plaintiffs. *Id.*, ¶ 12. Plaintiffs sent their objections and responses to Defendants on April 7, 2025. *Id.*, ¶ 12.

On June 3, 2025, the Parties participated in a day-long mediation with Robert Meyer Esq., of JAMS, a highly qualified, experienced mediator who has mediated numerous ERISA breach of fiduciary duty cases. *See* Gyandoh Decl., ¶ 14; *see also* ECF No. 23. Plaintiffs, with the assistance of consulting experts, were able to use the documents that Defendants provided and the documents and resources gathered in Plaintiffs' prefiling investigation to evaluate the relative strengths and weaknesses of their theory of liability and damages assessment prior to mediation. *Id.*, ¶ 14. During mediation, Defendants contested liability entirely, and argued that even if they were liable, damages would be significantly lower than Plaintiffs' estimated amount. The Parties, with the assistance of Mr. Meyer, argued ardently for their respective sides, refined their positions, and exchanged various scenarios. *Id.*, ¶ 3. On June 10, 2025, the Parties informed the Court that a settlement in principle was reached, with the Parties requiring more time to draft the terms of a class action settlement agreement. *See* ECF No. 22. The Court ordered the Parties to submit a joint status report by no later than September 22, 2025. *See* ECF No. 27.

**B.    Claims for Relief**

Plaintiffs' claims concern Defendants' various alleged breaches of fiduciary duty as Plan fiduciaries by, *inter alia*, (1) failing to monitor or control the Plan's recordkeeping expenses and (2) the failure to "defray reasonable expenses of administering the plan" stemming from the use of Plan participant forfeited funds to reduce Company contributions to the Plan instead of using the funds to reduce or eliminate the amounts charged to Plan participants for RKA services. Compl. ¶¶ 8-9 (quoting 29 U.S.C. § 1104(a)(1)(A)(ii)). The claims are as follows:

COUNT I:      Breaches of Fiduciary Duty of Prudence

COUNT II:     Failure to Adequately Monitor Other Fiduciaries

Count III:     Breach of Fiduciary Duty of Loyalty

Count IV:     Breach of ERISA's Anti-Inurement Provision

Defendants deny all claims and deny that they ever engaged in any wrongful conduct.

**C.      The Proposed Settlement**

The Settlement provides Defendant will pay $1,150,000.00 – the Gross Settlement Amount – to be allocated to participants on a *pro-rata* basis pursuant to the proposed Plan of Allocation in exchange for releases and dismissal of this action. The Gross Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Compensation if awarded by the Court. Gyandoh Decl., ¶ 23. The Class Members include all individuals in the Settlement Class:

> All persons who participated in the Lehigh Valley Health Network, Inc. 403(b) Savings Plan, at any time during the Class Period (October 21, 2018 through the date of the Preliminary Approval Order), including any Beneficiary of a deceased person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

Gyandoh Decl., ¶ 21.

Class Counsel intends to seek to recover their attorneys' fees not to exceed 33 1/3% of the Gross Settlement Amount, meaning $383,333.33.00. Gyandoh Decl., ¶ 23 (citing Settlement Agreement, Section 6.1). Class Counsel also intends to seek to recover litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, not to exceed $75,000.00 (seventy-five thousand U.S. dollars). *Id.* Additionally, Class Counsel intends to seek

4

Class Representatives' Case Contribution Awards in an amount not to exceed $5,000 each for Class Representatives Andrea Kiskeravage, Andrea Yachera, Juan Dominguez, Keilyn Williams, and Kim Alvarez. Gyandoh Decl., ¶ 23 (citing *Id.*, Section 1.10). Defendants also intend to retain an Independent Fiduciary to approve and authorize the Settlement on behalf of the Plan. Gyandoh Decl., ¶ 24 (citing Settlement Agreement, Sections 2.1). Fees and expenses to the Independent Fiduciary will constitute Administrative Expenses to be deducted from the Gross Settlement Amount. *Id.*

   **D.    Class Notice and Administration of Claims**

   Plaintiffs have selected RG/2 Claims Administration, LLC ("RG/2") to be the Settlement Administrator. RG/2 is highly experienced in class action claims administration. Upon preliminary approval, RG/2 will mail, by first class mail, the Court-approved Class Notice to Settlement Class members using addresses from employment records and documents associated with the Plan. RG/2 will administer a skip trace and receive updated address information for any notices that are returned for lack of a forwarding address and re-mail the notices to the updated addresses. Additionally, RG/2 will establish a settlement website providing Settlement Class members with important case documents, pertinent information, and contact information for the Settlement Administrator, Class counsel, and Defense counsel.  Lastly, RG/2 will institute a case-specific toll-free number for members to listen to an Interactive Voice Response ("IVR") system or speak with a live agent. The Notice, website, and telephone number will inform Settlement Class members of their rights to object, deadline to object, their inability to opt-out, Plaintiffs' incentive awards, and Class Counsel's request for attorney's fees and expenses.

**III.    PRELIMINARY APPROVAL IS WARRANTED**

   **A.    The Proposed Class Meets all Rule 23 Requirements**

At the settlement preliminary approval stage, when the court has not previously certified a class, the court may preliminarily certify a class for purposes of providing notice, leaving the final certification decision for the subsequent final Fairness Hearing. To be certified, a class must first satisfy the four basic prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* FED. R. CIV. P. 23(a); *In re: Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585, 596 (3d Cir. 2009). Courts routinely find that analogous ERISA § 502(a)(2) breach of fiduciary duty claims are well-suited for class status as they are brought on behalf of retirement plans and affected participants.

### 1.    The Class is Sufficiently Numerous

When there "are thousands of participants in [a] plan in any given year," the court "should make common sense assumptions regarding numerosity" under FED. R. CIV. P. 23(a)(1). *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 462 (E.D. Pa. 2000) (an analogous ERISA breach of fiduciary duty case). Here, there were at least 26,430 participants in the Plan in 2023. *See* Compl., ¶ 34. (citing Form 5500 filed with the U.S. Dept. of Labor at 2). Numerosity is satisfied.

### 2.    Common Questions of Law and Fact Abound

Commonality under FED. R. CIV. P. 23(a)(2), involves "the capacity of a class[-]wide proceeding to generate common *answers* apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). "Generally, this requirement is satisfied when the defendant has engaged in the same conduct towards members of the proposed class" such as "allege[ing] breach of a fiduciary duty in an ERISA action." *Diaz v. BTG Int'l Inc.*, No. 19-cv-1664, 2021 WL 2414580, at *3 (E.D. Pa. June 14, 2021). Commonality is satisfied here because "[q]uestions common to the Proposed Class include: (1) whether Defendants were Plan fiduciaries; (2) whether Defendants breached their fiduciary duties; (3) whether Plaintiffs suffered

injury; and (4) whether the Class is entitled to damages." *Nesbeth v. ICON Clinical Rsch. LLC*, No. 21-cv-1444, 2022 WL 22893879, at *3 (E.D. Pa. Mar. 10, 2022); *See* Compl., ¶ 37 (same).

### 3.    Plaintiffs' Claims are Typical of the Class

Here, Plaintiffs easily satisfy the typicality prong of Rule 23 because "Plaintiffs' claims are typical of the claims of the members of the Class. "Like other Class members, Plaintiffs participated in the Plan and have [allegedly] suffered injuries as a result of Defendants' mismanagement of the Plan. Defendants […] managed the Plan as a single entity." Compl., ¶ 36. Courts in this Circuit routinely find typicality is satisfied because, like here, "Defendants' alleged breaches of fiduciary duties harmed all Class Members similarly." *Nesbeth*, 2022 WL 22893879, at *3 (listing cases); *see also Diaz*, 2021 WL 2414580, at *4.

### 4.    Plaintiffs and Class Counsel Will Adequately Protect the Class's Interests

The "adequacy" requirement of Rule 23(a)(4) is a two-prong inquiry that "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006). Both prongs of the adequacy test are met.

### i.    Plaintiffs Are Adequate Representatives

Here, Plaintiffs understand the nature of their claims and duties as class representatives to vigorously prosecute this case through its conclusion. Plaintiffs have exceeded their duties thus far by, *inter alia*: (a) providing information to counsel prior to the initiation of the action and reviewing the Complaint; (b) providing documents and assisting counsel in discovery; and (c) maintaining communication with counsel and monitoring the progress of the litigation. *See* Andrea Kiskeravage Decl. ¶ 6-7; Andrea Yachera Decl. ¶ 6-7; Juan Dominguez Decl., ¶ 6-7; Keilyn Williams Decl., ¶ 6-7; Kim Alvarez Decl., ¶ 6-7. Moreover, had this litigation continued, Plaintiffs

were committed to seeing this action through to the end and undertaking any responsibilities required of them as class representatives, including testifying at trial. *See* Andrea Kiskeravage Decl. ¶ 6-7; Andrea Yachera Decl. ¶ 6-7; Juan Dominguez Decl., ¶ 6-7; Keilyn Williams Decl., ¶ 6-7; Kim Alvarez Decl., ¶ 6-7. Additionally, Plaintiffs do not have any conflicts with the class, particularly because they are bringing this suit on behalf of the Plan as a whole. To be sure, "each member of the Settlement Class, just like the Named Plaintiffs, has a similar interest in recovering losses suffered by the Plan as a result of the alleged wrongful conduct." *Diaz*, 2021 WL 2414580, at *4; *see also Tracey v. MIT*, No. 16-cv-11620, 2018 WL 5114167, at * 6 (D. Mass. Oct. 19, 2018) ("[B]ecause the crux" of ERISA breach of fiduciary duty cases, "hinges on whether defendants acted imprudently with respect to the Plan and not the investments of individual participants, this Court [should] find[] no substantial intra-class conflict in the proposed class."). Plaintiffs are adequate class representatives.

### ii.    Plaintiffs' Counsel Are more than adequate

Capozzi Adler and the undersigned counsel exercised their extensive experience and knowledge of ERISA matters throughout this litigation, including achieving a settlement. Mark K. Gyandoh is a partner and chair of the Fiduciary Practice Group at Capozzi Adler and has been litigating ERISA fiduciary breach lawsuits for 20 years and he and Capozzi Adler currently serve as counsel in over two dozen fiduciary breach actions across the country. Gyandoh Decl., ¶¶ 26-36. As many courts in this Circuit and others have held, appointing Capozzi Adler as Class Counsel is warranted. *See Nesbeth*, 2022 WL 22893879, at *4 ("I will appoint Capozzi Adler, P.C. as Class Counsel. [...] Class Counsel has extensive experience and has worked diligently to litigate Plaintiffs' claims."); *Diaz*, 2021 WL 2414580, at *8 (appointing the undersigned as settlement Class Counsel and stating that we "appear well qualified to weigh the risks and benefits of

continued litigation as compared to the relief provided by the Settlement."); *Hawkins v. Cintas Corp.*, No. 19-cv-1062, 2025 WL 523909, at *3 (S.D. Ohio Feb. 18, 2025) (*Hawkins II*) ("Capozzi Adler has been appointed Class Counsel in several ERISA breach of fiduciary duty cases similar to the instant case."). Likewise, Co-Counsel for the Class, Peter Muhic of Muhic Law LLC, is an accomplished trial lawyer who has tried complex cases to verdict in federal and state courts throughout the country and has extensive experience in ERISA litigation. Mr. Muhic is a graduate of Temple University School of Law. *See id.*; biography at https://muhiclaw.com/. The Class continues to be adequately represented.

### 5.    The Class May Be Properly Certified Under Rule 23(b)(1)

The proposed Class may be certified under Rule 23(b)(1)(A) and/or (B), as numerous courts have done in similar cases. *See* Gyandoh Decl., Exhibit 7 (list of decisions certifying classes in ERISA actions). Because the Complaint alleges breaches of fiduciary duties under ERISA, the only remedy available to participants in the Plan is plan-wide relief. *See Mass. Mut. Life Ins. Co.*, 473 U.S. 134, 139-40 (1985). Accordingly, class certification should be granted under Rule 23(b)(1)(B). *See Schering-Plough*, 589 F.3d at 604 (finding certification of a Rule 23(b)(1)(B) class is appropriate where the plaintiff's "proofs regarding defendants' conduct will, as a practical matter, significantly impact the claims of other Plan participants[…]. [Plaintiff's] claims are based on defendants' conduct, not, as defendants urge, on unique facts and individual relationships"); *Diaz*, 2021 WL 2414580, at *5 ("When a breach of fiduciary duty is at issue, any individual adjudication regarding the breach would necessarily affect the interests of others. […] Therefore, it is appropriate to certify the class pursuant to Rule 23(b)(1)(B)."); *Nesbeth*, 2022 WL 22893879, at *3 (similar).

Alternatively, it is not uncommon for courts to certify ERISA class actions under both 23(b)(1)(B) and 23(b)(1)(A). *See, e.g.*, *Nesbeth*, 2022 WL 22893879, at *4 ("[F]or the purpose of settlement […] and pursuant to Rule 23(a) and Rule 23(b)(1), I will certify conditionally the Proposed Class."); *Stanford v. Foamex, L.P.*, 263 F.R.D. 156, 173-174 (E.D. Pa. 2009); *In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, MDL No. 1658, 2009 WL 331426, at *10-11 (D.N.J. Feb. 10, 2009). In total, Class Certification is appropriate here.

## IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    The Settlement Satisfies Third Circuit Requirements

"The final approval of a class action settlement requires a finding that the settlement is fair, adequate, and reasonable." *Nesbeth*, 2022 WL 22893879, at *4 (quoting *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983)). However, under FED. R. Civ. P. 23(e)(1)(B), at the preliminary approval stage the court is only "required to determine only whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies.'" *Id.* (quoting *Mehling v. New York Life. Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007)). The Court has no reason to doubt that the Settlement is adequate, and reasonable, and will be finally approved under the criteria set forth in Rule 23(e)(2) and the Third Circuit. In the Third Circuit, courts deciding on settlement approval consider nine primary factors listed in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) ("*Girsh* factors"). These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Sullivan v. DB Investments, Inc*., 667 F.3d 273, 319-20 (3d Cir. 2011) (quoting *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010)).

There are additional "*Prudential* Factors" but, "[u]nlike the *Girsh* factors, which the Court must always make specific findings regarding, the *Prudential* factors are merely 'illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms.'" *Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 18-1370, 2020 WL 3481458, at *12 (W.D. Pa. June 26, 2020) (quoting *In re Pet Food Prod. Liab. Litig*., 629 F.3d at 350). The *Prudential* factors are:

> (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Cunningham v. Wawa, Inc.*, No. 18-cv-3355, 2021 WL 1626482, at *4 (E.D. Pa. Apr. 21, 2021) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 323 (3d Cir.1998)).

An analysis of the *Girsh* and applicable *Prudential* Factors warrants preliminary approval.

## 1.    The complexity, expense, and likely duration of the litigation

"The first factor 'captures the probable costs, in both time and money, of continued litigation.'" *In re: Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016), *as amended* (May 2, 2016) ("*NFL*") (quoting *In re: Warfarin Sodium Antitrust Litig*.,

391 F.3d 516, 535-36 (3d Cir. 2004) (internal quotation omitted)). In this case, the probable costs of continued litigation with respect to both time and money are high, especially because "[t]he complexity inherent in class actions is amplified in ERISA class actions." *Davis v. Magna Int'l of Am., Inc.*, No. 20-cv 11060, 2025 WL 66052, at *3 (E.D. Mich. Jan. 10, 2025) (quoting *Karpik v. Huntington Bancshares Inc.*, No. 17-cv-1153, 2021 WL 757123, at *4 (S.D. Ohio Feb. 18, 2021)); *see also Krueger v. Ameriprise,* No. 11-cv-02781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) ("ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation.'"); *Pledger v. Reliance Trust Co.*, No. 15-cv-4444, 2021 WL 2253497, at *7 (N.D. Ga. Mar. 8, 2021) ("Effectively and successfully litigating an ERISA breach of fiduciary action requires a specialized knowledge and expertise [...] This litigation involved highly technical knowledge of investment plans, investment knowledge, and industry practices."). The Settlement in this Action comes at an opportune time given if the litigation continues, there would be substantial expense to the Parties associated with necessary factual and expert discovery and assorted motion practice relating to class certification, a motion for summary judgment, trial, and potential appeals. At the trial stage, both sides would face burdensome litigation involving intricate fact presentation and the continued costs of retaining experts in areas such as ERISA duties, damages, and defined contribution investing. This factor is satisfied because without a settlement, the future of this case would be unjustifiably lengthy, costly, and complex.

### 2.    The reaction of the Class to the Settlement

The second *Girsh* Factor, "the reaction of the class to the settlement" is moot at this stage. *See Gates*, 248 F.R.D. at  445 n.8 ("At this juncture, the Court cannot consider the objections of class members as none have yet been filed."). However, it is already persuasive that "[t]he Class Representatives who have dedicated time and energy to this matter also find that the Settlement

Agreement is fair, reasonable, and adequate." *Hawkins v. Cintas Corp.*, No. 19-cv-1062, 2024 WL 3982210, at *9 (S.D. Ohio Aug. 27, 2024) (*Hawkins I*). *See* Andrea Kiskeravage Decl. ¶ 6-7; Andrea Yachera Decl. ¶ 6-7; Juan Dominguez Decl., ¶ 6-7; Keilyn Williams Decl., ¶ 6-7; Kim Alvarez Decl., ¶ 6-7. *See also Karpik*, 2021 WL 757123, at *6 (the class representatives' "support also favors approval."); *Delaware Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*, 739 F. Supp. 3d 270, 282 (E.D. Pa. 2024) ("A court may presume that a fee is reasonable when lead plaintiff approves.").

### 3.    The stage of the proceedings and the amount of discovery conducted

"The third *Girsh* factor 'captures the degree of case development that class counsel have accomplished prior to the settlement. Through this lens, courts can determine whether class counsel had an adequate appreciation of the merits of this case before negotiating.'" *Kanefsky v. Honeywell Int'l Inc.,* 2022 WL 1320827, at *5 (D.N.J. May 3, 2022) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)). This factor overlaps with the first and ninth *Girsh* factors because "as discovery becomes more costly, settlement can become less likely because the higher costs escalate the settlement value and the parties become entrenched in the battlefield of litigation." *Rossini*, 2020 WL 3481458, at 13; *see also Diaz*, 2021 WL 2414580, at *6 ("The early disposition of this matter supports approval of settlement because" it "significantly reduced the expense to both Parties").

This Settlement comes at an ideal stage because prior to settling, Plaintiffs conducted extensive informal and formal discovery, including the engagement of consulting experts, and Defendants produced ample documents by the time mediation commenced. *See* Gyandoh Decl., ¶¶ 3, 7-13. Discovery perfected each Parties' assessment of the strengths and weaknesses of Plaintiffs' claims, as well as potential Class wide damages before further litigation costs were

incurred. Courts find this factor satisfied where, like here, "Counsel represented that discovery encompassed 'informal' discovery, including discovery and analysis from third parties, such as Plaintiffs' consulting experts." *Diaz*, 2021 WL 2414580, at *6; *see also Hawkins I*, 2024 WL 3982210, at *7 (same). Accordingly, the discovery conducted and the stage at which the Settlement occurred supports preliminary approval.

### 4.    The risks of establishing liability and damages (Factors 4, 5)

"Together, the fourth and fifth Girsh factors 'survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefit of an immediate settlement.'" *Kanefsky,* 2022 WL 1320827, at *5 (quoting *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d at 537). Although Plaintiffs are confident in their case, the potential upcoming trial brings real uncertainties for both sides, especially because "[a]t bottom, this class action involves complex facts and an application of sophisticated, evolving ERISA laws where the probability of success on the merits in the litigation for either side is, at best, uncertain." *Hawkins I*, 2024 WL 3982210, at *11. Of course, "[t]his uncertainty, combined with the risks associated with a potential trial and the need to overcome likely summary judgment motions, indicates that Plaintiff faced significant risks in establishing liability and damages if the matter proceeded to trial." *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451, at *5 (D.N.J. May 31, 2012); *see also In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 496-97 (E.D. Mich. 2008) ("Plaintiffs admit that risk is inherent in any litigation, particularly class actions.  The risk is even more acute in the complex areas of ERISA law.")  Without this settlement, Plaintiffs would have to defeat Defendants' anticipated motion for summary judgment, and if successful, spend a significant number of resources to prosecute this case, all with no guarantee of any recovery.

Moreover, even if Plaintiffs were to prevail on liability, "this action would have required expert testimony including expert testimony on damages" which means "Plaintiffs also faced the risk of a low damage award after substantial investment of both time and money." *Diaz*, 2021 WL 2414580, at *6. This is because, "[e]ven if Plaintiffs established a fiduciary breach, it is 'difficult' to measure damages." *Karpik*, 2021 WL 757123, at *5 (quoting Restatement (Third) of Trusts § 100 cmt. b (1)); *see also Cunningham*, 2021 WL 1626482, at *5 (an ERISA case noting the parties would have to present differing opinions on appropriate judgment calls and valuations). This factor weighs heavily in favor of approval because without this Settlement, Plaintiffs would endure lengthy and expensive litigation at the risk of less or no recovery at all.

### 5.    The risks of maintaining class certification

This factor is satisfied because "the approval of a settlement class for the purpose of an uncontested settlement agreement after notice to all interested parties does not guarantee that the same result would have been reached if the Court had to decide a contested motion for class certification." *Diaz*, 2021 WL 2414580, at *7. Relatedly, "the nature of an ERISA claim which authorizes plan-wide relief, [means] there is a risk that failure to certify the class would leave future plaintiffs without relief." *Nesbeth*, 2022 WL 22893879, at *3. The fact that this Settlement would guarantee class certification supports approval.

### 6.    Defendants' ability to withstand a greater judgment

A defendant's ability to withstand a greater judgment is insignificant unless the "parties indicate that they have settled for a below-value amount because of concerns over the defendant's ability to pay, or where a court is concerned that a settlement is unduly small in light of the misconduct alleged and the defendant's demonstrable ability to pay much more." *Rossini*, 2020 WL 3481458, at *16 (listing cases); *see also Kanefsky*, 2022 WL 1320827, at *6 ("Neither party

has suggested that the Settlement Amount was in any way related to Honeywell's ability to pay. Thus, this factor is not relevant to the Court's analysis"). Defendants' ability to withstand a greater judgment is not a bar to settlement.

> **7.    The range of reasonableness of the settlement fund in light of all the attendant risks of litigation (factors 8 and 9).**

The final two *Girsh* "factors test two sides of the same coin: 'reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial.'" *Kanefsky*, 2022 WL 1320827, at *6 (quoting *Warfarin*, 391 F.3d at 538).

With respect to Plaintiffs' RKA claim, the Plan's recordkeeper throughout the Class Period is/was AIG Retirement Services, which was also known as VALIC Retirement Services Company or "VRSCO." See Compl., ¶¶ 85. Plaintiffs' argument for damages (leaving aside liability arguments) was that the Plan overcharged Plan participants when managed account fees are included in the price of recordkeeping. Gyandoh Decl., ¶¶ 3, 19.  The Plan's base RKA fee was $52 per participant in 2018 and 2019. The fee was lowered to $33.40 effective October 1, 2019. The Complaint shows twelve Comparator Plans throughout the Class Period and alleges that these Comparator Plans received the same recordkeeping services, and sometimes more, while paying significantly below $52 and $33.40 per participant. Compl., ¶¶ 110-13. The average fee paid by the Comparator Plans from 2018 to 2022 was $28. *Id.*, ¶ 114.

However, Plaintiffs also allege that throughout the Class Period, the Plan offered, through AIG/VRSCO, a managed account service named Guided Portfolio Services ("GPS"), that charged an annual fee of .045% of enrolled participant assets in addition to the base RKA.  Plaintiffs' argument was that the managed account service was part of the RKA services, but more importantly, was superfluous and unnecessary.  Accordingly, Plaintiffs' theory of damages was that using a $28 reasonable rate as a benchmark, damages ranged from an estimate of $1,485,

16

246.40 excluding managed account service fees to $9,650,000 if managed account service fees are included.

With respect to the forfeiture claim, Plaintiffs alleged that more than $400,000 in Plan participant forfeitures should have been allocated to reduce Plan expenses.

Defendants vigorously rejected all of Plaintiffs' theories of liability and damages, especially with respect to the inclusion of managed account fees as part of RKA services. Gyandoh Decl., ¶¶ 3, 19. If any of Defendants' arguments were credited by the Court, it would reduce Plaintiffs' damages considerably, if not totally. In that light, the proposed Settlement Amount of $1,150,000.00 is an appropriate discount to avoid the costs of continued litigation and potential risk for Plaintiffs to receive less or no damages. It amounts to roughly 11% ($10,050,000 in damages using calculations which include managed account fees incurred and includes forfeiture amounts of $400,000.00) to more than 61% ($1,887,246.00 in damages using RKA damages which exclude managed account fees and includes forfeiture amounts of $400,000.00). For context, the range of the percentage of recovery is in accord with the typical percentage district courts have approved. *See e.g. Kanefsky*, 2022 WL 1320827, at *6 (noting the medium recovery in securities class action cases are between 4.9% and 7.4% of estimated damages); *see also Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, No. 19-cv-1227, 2022 WL 118104, at *8 (E.D. Pa. Jan. 12, 2022) (finding "the Third Circuit's median recovery of 5.2% in similar [securities] cases" persuasive); *Vista Healthplan, Inc. v. Cephalon, Inc*., No. 06-cv-1833, 2020 WL 1922902, at *21 (E.D. Pa. Apr. 21, 2020) (noting the parties' experts' extreme disagreement resulting in a settlement of "approximately 11.5% of that best possible recovery situation. Courts have approved settlements in and around this range."). The percentage of recovery is also in line with, or better than, similar ERISA cases. *See, e.g., Johnson v. Fujitsu Tech. & Business of America, Inc.*, No. 16-cv-03698,

2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving an ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *Foster v. Adams & Assocs., Inc.*, No. 18-cv-02723, 2022 WL 425559, at *5 (N.D. Cal. Feb. 11, 2022) (listing ERISA cases approving settlement amounts ranging from 3.2% to 30% of estimated damages); *Gaines v. BDO USA, LLP*, No. 22-cv 1878, slip op. at 3 (N.D. Ill. May 18, 2024) (approving settlement that was less than 3% of plaintiffs' claimed damages in an ERISA case). The Settlement amount is reasonable when considering all the attendant risks of further litigation.

An analysis of the *Girsh* Factors supports preliminary approval of the Settlement.

### 8.    The Applicable Prudential Factors Also Support Approval

While an evaluation of each of the *Girsh* factors is mandatory, "the Prudential considerations are just that, prudential. They are permissive and non-exhaustive." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013). The Prudential factors that are applicable to the instant case underscore the fairness of the settlement. The first *Prudential* factor considers the "extent of discovery" and "bear[s] on the ability to assess the probable outcome of a trial on the merits." *Cunningham*, 2021 WL 1626482, at *4 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d at 323). This factor, "maturity of the underlying substantive issues— substantially mirrors *Girsh* factor three, the stage of the proceedings[,]" and therefore does not need to be reiterated. *Id*. at 6. The second and third *Prudential* factors are inapplicable as there are no subclasses. *Id*.

Also, although class members do "not have the right to opt out, the fourth factor does not preclude approval." *Cunningham*, 2021 WL 1626482, at *6; *see also Nesbeth*, 2022 WL 22893879 (granting preliminary approval for a non-opt out class). Plus, the Notice program will adequately inform class members of the procedures for objecting.

18

Plaintiffs' counsel's request for attorney's fees is reasonable in accordance with the Fifth Prudential factor and other Third Circuit Precedent. Like in *Nesbeth*, "Class Counsel will apply for up to 33 1/3% of the settlement amount." *Nesbeth*, 2022 WL 22893879, at *5. Before the final approval hearing, Class Counsel will provide more detailed legal and factual support for their fee request. However, it is sufficient at this stage that "that these amounts are not facially unreasonable." *Id*. Indeed, "[i]n complex ERISA cases, courts in this Circuit and others also routinely award attorneys' fees in the amount of one-third of the total settlement fund." *Stevens v. SEI Invs. Co*., No. 18-cv-4205, 2020 WL 996418, at *12 (E.D. Pa. Feb. 28, 2020); *see also Pinnell v. Teva Pharms. USA, Inc.*, No. 19-cv-5738, 2021 WL 5609864, at *1 n.2 (E.D. Pa. June 11, 2021) (awarding one-third of the common fund in a similar breach of fiduciary duty case because "[Capozzi Adler] represented Participants on a contingent basis with the risk the action would not produce a recovery."); *Diaz*, 2021 WL 2414580, at *8 (awarding one-third of the common fund); *Hawkins II*, 2025 WL 523909, at *3 (same, because "the requested award of one-third of the common fund […] is consistent with fees awarded in similar actions in this circuit and across the country."); *Pledger*, 2021 WL 2253497, at **5, 7 (same).

Similarly, the request for case contribution awards of $5,000.00 for each Class Representative and reasonable expense reimbursement is fair, reasonable, and adequate. *See*, *e.g.*, *Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 496 (E.D. Pa. 2018) (courts regularly approve awards "to compensate class representatives for services they provide and risks they incur during the course of litigation as well as to reward the members for the benefit they provide to the class and to the public."); *Krueger*, 2015 WL 4246879, at *3 (finding case contribution award warranted because "ERISA litigation against an employee's current or former employer carries unique risks, including alienation from employers or peers."); *Kanefsky*, 2022 WL 1320827, at *5 (awarding

$10,000 per named plaintiff); *Cunningham*, 2021 WL 1626482, at *8 (awarding $25,000 to each named plaintiff). Plaintiffs will provide further legal and factual support for their request for final approval. For now, it is sufficient "that these amounts are not facially unreasonable." *Nesbeth*, 2022 WL 22893879, at *5 (preliminary approving a $10,000 award for each class representative).

Lastly, the Plan of Allocation should also be approved as it "is fair and reasonable" per the sixth and final *Prudential* factor. *Cunningham*, 2021 WL 1626482, at *4; *see also In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 126 (D.N.J. 2002) ("Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable, and adequate."). Like the approved allocation method in *Nesbeth*, "payment will be allocated in proportion to the sum of Class Members' Plan balances as compared to the sum of the total balance for all Class Members[,]" with current members receiving their share "into their accounts" and "Members without active accounts [will be paid] by check." *Nesbeth*, 2022 WL 22893879, at *4; *see also* Settlement Exhibit D, Plan of Allocation; *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *6 (for members with active accounts "[t]he distribution takes place through the Plan[] so as to realize the tax advantage of investment in the Plan[]."). Undoubtedly, "[P]ro rata distributions of settlement funds are consistently upheld." *Castro v. Sanofi Pasteur Inc*., No. 11-7178, 2017 WL 4776626, at *7 (D.N.J. Oct. 23, 2017) (cleaned up); *see also Diaz*, 2021 WL 2414580, at *2; *Rossini,* 2020 WL 3481458, at *17. It is also more than fair that class members "will receive a payment regardless [of] if they retained [] records or any other proof." *Abramson v. Agentra, LLC*, No. 18-cv-615, 2021 WL 3370057, at *15 (W.D. Pa. Aug. 3, 2021). The plan of allocation is fair, reasonable, and adequate.

In total, the *Girsh* and applicable *Prudential* factors demonstrate that the Settlement is fair, reasonable, and adequate.

## V.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

The Class Notice and notice dissemination plan provide "the best notice that is practicable under the circumstances" and accord with the principles of due process. Rule 23(c)(3).  As detailed in section III.B., *supra*, the Notice Plan utilizes first class mail, has procedures for return mail, creates a website and toll-free number for members, and informs members of their rights and procedures to object to the Settlement. *See Abramson*, 2021 WL 3370057, at *15 (finding a materially similar notice plan acceptable); *Nesbeth*, 2022 WL 22893879, at *5 ("The Proposed Notice adequately informs Class Members of, *inter alia*, the subject of the lawsuit, the terms of the settlement, where to find additional information, and details of the final fairness hearing, including how to present objections.").  The proposed notice plan is the best practicable plan and warrants preliminary approval.

## VI.    CONCLUSION

Plaintiffs propose the Fairness Hearing be scheduled at least 120 calendar days after entry of the Preliminary Approval Order in order to provide the Settlement Class with fair notice and the opportunity to be heard, as well as to provide notice to appropriate federal and state officials as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715.  The submitted proposed preliminary approval order sets forth the proposed schedule of events which are subject to the Court's approval.  For the reasons set forth above, the Settlement meets the standard for preliminary approval under Rule 23.

Dated:  September 22, 2025                    Respectfully submitted,

**CAPOZZI ADLER, P.C.**

<u>/s/</u> <u>Mark K. Gyandoh</u>
Mark K. Gyandoh, Esquire
Attorney ID No. 88587
James A. Maro, Esquire
Attorney ID No. 86420
James A. Wells, Esquire
Attorney ID No. 83517
Giulia T. Conboy, Esquire
Attorney ID No. 335906
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax (717) 232-3080
Email: markg@capozziadler.com
            jamesm@capozziadler.com
            jayw@capozziadler.com
            giuliac@capozziadler

Peter A. Muhic
**MUHIC LAW LLC**
923 Haddonfield Road, Ste. 300
Cherry Hill, NJ  08002
Tel: (856) 324-8252
Fax: (717) 232-3080
Email: peter@muhiclaw.com

*Counsel for Plaintiffs and the Class*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: <u>*/s/ Mark K. Gyandoh*</u>
        Mark K. Gyandoh, Esq.

23